

1   GIRARDI | KEESE
    1126 Wilshire Boulevard
2   Los Angeles, California 90017
    Telephone: (213) 977-0211
3   Facsimile: (213) 481-1554
    THOMAS V. GIRARDI – BAR NO. 36603
4   J. PAUL SIZEMORE – BAR NO. 254981
    V. ANDRE SHERMAN—BAR NO. 198684
5

6   Attorneys for Plaintiffs                          E-filing

7

8              UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  (SAN FRANCISCO DIVISION)

11

12  JAMES SIMMONS, as heir at law of          MDL No. 1699
    decedent JOANN PAULA SIMMONS,
13
              Plaintiffs,                      CV Case No.   08      0838
14
15  v.

16  PFIZER, INC., PHARMACIA                    CIVIL COMPLAINT
    CORPORATION, and G.D. SEARLE
17  LLC, (FKA G.D. SEARLE & CO.),

              Defendants.                      JURY TRIAL DEMANDED
18

19

20          JAMES SIMMONS, as heir at law of decedent JOANN PAULA SIMMONS,

21  (hereafter "Plaintiff") by and through his counsel, brings this action against Defendants PFIZER,

22  INC., PHARMACIA CORPORATION, and G.D. SEARLE LLC, (FKA G.D. SEARLE & CO.)

23  (hereafter "Defendants") and alleges as follows:

24  **I.    PARTIES**

25          1.       This is an action for damages arising from Defendants' design,

26  manufacture, sale, testing, marketing, advertising, promotion, and/or distribution of the unsafe

27  medication Valdecoxib, trade name BEXTRA® ("BEXTRA").

28

    472328.2                                                      COMPLAINT

1    2.    Plaintiff JAMES SIMMONS and his wife/decedent JOANN PAULA

2  SIMMONS were at all relevant times adult residents of the state of Idaho.

3    3.    Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its

4  principal place of business in New York, New York. In 2003, Pfizer acquired Pharamcia for

5  nearly $60 billion. At all relevant times Pfizer and/or its predecessors in interest were engaged in

6  the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting,

7  and selling the drug Valdecoxib, under the trade name BEXTRA in Arkansas, Washington and

8  nationwide.

9    4.    Defendant Pharmacia Corporation ("Pharmacia") is a Delaware

10  corporation with its principal place of business in New Jersey. At all relevant times, Pharmacia,

11  and its predecessors in interest have been engaged in the business of designing, testing,

12  manufacturing, packaging, marketing, distributing, promoting, and selling BEXTRA nationwide

13  and in California.

14    5.    Defendant G.D. Searle LLC, (FKA G.D. Searle & Co.) ("Searle") is

15  a Delaware corporation with its principal place of business in Illinois. At all relevant times, Searle

16  has been engaged in the business of marketing and selling BEXTRA nationwide and in California.

17  Searle is a subsidiary of Pfizer, acting as its agent and alter ego in all matters alleged within this

18  Complaint.

19  **II.    JURISDICTION AND VENUE**

20    6.    This is an action for damages, which exceeds seventy-five thousand

21  dollars ($75,000.00).

22    7.    There is complete diversity of citizenship between the Plaintiff and

23  Defendants. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A.

24  § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00, and because

25  there is complete diversity of citizenship between Plaintiff and Defendants.

26    8.    Venue is proper in this United States Judicial District pursuant to

27  28 U.S.C.A. § 1391. Defendants marketed, advertised and distributed the dangerous product in the

28

- 2 -    COMPLAINT

1   district, thereby receiving substantial financial benefit and profits the dangerous product in this

2   district, and reside in this district under 28 U.S.C.A. § 1391(c), such that venue is proper.

3               9.          At all relevant times herein, Defendants were in the business of

4   designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing,

5   warranting and selling their product, BEXTRA. Defendants at all times relevant hereto designed,

6   developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate

7   commerce and California the aforementioned prescription drug. Defendants do substantial

8   business in the State of California and within this Federal Judicial District, advertise in this district,

9   receive substantial compensation and profits from sales of BEXTRA in this District, and made

10  material omissions and misrepresentations and breaches of warranties in this District so as to

11  subject them to *in personam* jurisdiction in this District. In engaging in the conduct alleged herein

12  each defendant acted as the agent for each of the other defendants, or those defendant's

13  predecessors in interest.

14  **III.    INTERDISTRICT ASSIGNMENT**

15              10.         Assignment to the San Francisco Division is proper as this action is

16  related to *In Re: Bextra and Celebrex Marketing Sales Prac. and Pro. Liab. Lit.*, MDL-1699,

17  assigned to the Honorable Charles R. Breyer by the Judicial Panel on Multidistrict Litigation on

18  September 6, 2005.

19  **IV.    FACTUAL BACKGROUND**

20          **A.      Facts Regarding Decedent Joann Paula Simmons**

21              11.         Joann Paula Simmons was prescribed, and began taking, BEXTRA

22  on or about August 16, 2004.

23              12.         As a direct and proximate result of using BEXTRA, JOANN

24  PAULA SIMMONS suffered severe cardiovascular injuries. Specifically, on or about February

25  13, 2006, Joann Paula Simmons suffered a myocardial infarction which resulted in her untimely

26  death.

27              13.         JOANN PAULA SIMMONS and her healthcare providers were at

28  the time of her myocardial infarction and initial injury unaware—and could not have reasonably

                                    - 3 -                                    COMPLAINT

1   known or have learned through reasonable diligence—that such injury directly resulted from

2   Defendants' negligent and otherwise culpable acts, omissions, and misrepresentations or from

3   JOANN PAULA SIMMONS ingestion of BEXTRA.

4              14.         JOANN PAULA SIMMONS used BEXTRA in a proper

5   andreasonably foreseeable manner and used it in a condition that was substantially the same as the

6   condition in which it was manufactured and sold.

7              15.         JOANN PAULA SIMMONS would not have used BEXTRA had

8   Defendants properly disclosed the risks associated with the drug.

9       **B.        Facts Regarding BEXTRA and Defendants' Conduct**

10             16.         BEXTRA is one of a class of pain medications called non-steroidal

11  anti-inflammatory drugs ("NSAIDs"). Aspirin, naproxen (trade name Aleve), and ibuprofen (trade

12  name Advil) are examples of well-known NSAIDs.

13             17.         NSAIDs reduce pain by blocking the body's production of pain

14  transmission enzymes called cyclo-oxygenase or "COX." There are two forms of COX

15  enzymes—COX-1 and COX-2. Aspirin, naproxen and ibuprofen all act by blocking COX-1

16  enzymes.

17             18.         In addition to transmitting pain sensations, COX-1 is involved in

18  maintaining and repairing gastrointestinal tissue. It is generally accepted in the medical

19  community that blocking the COX-1 enzyme hampers the body's ability to repair gastric tissue and

20  can cause harmful gastrointestinal side effects, including stomach ulceration and bleeding.

21             19.         In addition to transmitting pain sensations, COX-2 is involved in the

22  production of prostacyclin, a substance responsible for preventing the formation of blood clots.

23  It is generally accepted in the medical community that blocking the COX-2 enzyme encourages the

24  formation of blood clots and can cause various clot-related cardiovascular events, including heart

25  attack, stroke, unstable angina, cardiac clotting, and hypertension.

26             20.         Traditional NSAIDs like aspirin reduce pain sensations by inhibiting

27  both COX-1 and COX-2 enzymes simultaneously. As would be expected, traditional NSAIDs may

28

- 4 -                                                  COMPLAINT

1  cause ulcers in the stomach and intestines. However, traditional NSAIDs do not cause blood clots,
2  rather they actually reduce the risk of clots and help protect heart function.

3       21.     Defendants and other pharmaceutical companies set out to remedy
4  these ulcer and bleeding problems suffered by some NSAID users by developing "selective"
5  inhibitors that would block only COX-2 production, thus (supposedly) allowing the proper
6  maintenance of gastric tissue while still reducing pain sensations.

7       22.     In making this decision, Defendants and their predecessors in interest
8  either intentionally ignored or recklessly disregarded current medical knowledge that selective
9  COX-2 inhibition lowers prostacyclin levels, caused blood clots, and gives rise to various clot-
10 related cardiovascular events, including heart attack, stroke, unstable angina, cardiac clotting, and
11 hypertension.

12      23.     Pfizer and Searle launched Celebrex, the first of the three major
13 selective COX-2 inhibitor drugs, in early 1999 and initiated a massive marketing campaign to
14 convince doctors and consumers of the superiority of the new "blockbuster" drug over less
15 expensive NSAIDs. Merck & Co., Inc. ("Merck") launched Vioxx, its new COX-2 inhibitor
16 shortly thereafter.

17      24.     Seeking increased market share, Defendants, and their predecessors
18 in interest, then sought approval of a "second generation" COX-2 inhibitor and filed for FDA
19 approval of BEXTRA on January 16, 2001 for the (i) prevention and treatment of acute pain,
20 (ii) treatment of primary dysmenorrhea, and (iii) relief of the signs and symptoms of osteoarthritis
21 and adult rheumatoid arthritis.

22      25.     The FDA granted approval of the new drug on November 16, 2001,
23 for two particular uses: treatment of primary dysmenorrhea and relief for the signs and symptoms
24 of osteoarthritis and rheumatoid arthritis. However, the agency did not grant approval of
25 BEXTRA for the management or prevention of acute pain, finding it to be no better than other
26 existing NSAIDs. Further, Defendants did not obtain approval to promote BEXTRA as more
27 effective than other NSAIDs in preventing clinically serious gastrointestinal events such as ulcers
28 or gastric bleeding, a potentially serious blow to Defendants.

-5-                                                      COMPLAINT

1        26.         Based on the studies performed on Celebrex, Vioxx, BEXTRA, and

2    other COX-2 inhibitors, Defendants knew by 1998 (while BEXTRA was begin developed and

3    tested) that selective COX-2 inhibitors posed serious cardiovascular risks for anyone who took

4    them, and presented a specific additional threat to anyone with existing heart disease or

5    cardiovascular risk factors.

6        27.         Studies show that COX-2 inhibitors, including BEXTRA, decrease

7    blood levels of a cardioprotective fat called prostacyclin. When those levels fall, the arteries are

8    more vulnerable to clotting, high blood pressure, heart attack, and stroke.

9        28.         On December 9, 2004, the FDA issued new information on side

10   effects associated with the use of BEXTRA and required the addition of certain warnings to, and

11   the strengthening of other warnings on, the BEXTRA label. The enhanced warnings followed in

12   the wake of the results of additional cardiovascular studies performed by Defendants, as well as

13   numerous complaints to the FDA regarding severe skin reactions.

14       29.         Defendants' own post- drug approval study (completed in mid-2004)

15   showed an increased cardiovascular risk in patients treated with BEXTRA after undergoing

16   coronary artery bypass graft surgery. Observed events included heart attack, stroke, and blood

17   clots in the legs and lungs. The results were particularly relevant and striking as each of the study

18   participants who was a post-bypass surgery patient was taking anti-clotting agents at the time their

19   exposure to BEXTRA was being tracked.

20       30.         In mid-January 2005, a peer-reviewed paper from the University of

21   Pennsylvania found that in patients having heart bypass surgery, those who took BEXTRA, as

22   opposed to a placebo, were three times more likely to have a heart attack or stroke.

23       31.         From February 16-18, 2005, the FDA's Drug Safety and Risk

24   Management Advisory Committee and the Arthritis Drug Advisory Committee met jointly to

25   further examine the safety of COX-2 inhibitors. There, FDA Office of Drug Safety Officer David

26   Graham stated that COX-2 inhibitors increase the risk for adverse cardiovascular events at about

27   the same rate as cigarette smoking, hypertension, and diabetes.

28

- 6 -                                    COMPLAINT

32.        Despite years of studies on COX-2 inhibitors, as well as the

disturbing new studies specifically analyzing the risks of BEXTRA, Defendants failed to take any

action to protect the health and welfare of patients and instead continued to offer the drug for sale

even after the FDA's Drug Safety and Risk Management Advisory Committee and Arthritis Drug

Advisory Committee meetings.

33.        On April 7, 2005, the FDA finally requested that Defendants

voluntarily withdraw BEXTRA from the market, stating:

> ... the Agency has concluded that the overall risk versus benefit
> profile of Bextra is unfavorable. This conclusion is based on the
> potential increased risk for serious cardiovascular (CV) adverse
> events, which appears to be a class effect of non-steroidal anti-
> inflammatory drugs (NSAIDs) (excluding aspirin), an increased
> risk of serious skin reactions (e.g. toxic epidermal necrolysis,
> Stevens-Johnson syndrome, erythema multiforme) compared to
> other NSAIDs, and the fact that Bextra has not been shown to offer
> any unique advantage over the other available NSAIDs.

FDA Alert for Healthcare Professionals, April 7, 2005.

34.        Continuing, the FDA noted:

> Bextra has been demonstrated to be associated with an increased
> risk of serious adverse CV events in two short-term trials in patients
> immediately post-operative from coronary artery bypass graft
> (CABG) surgery .... FDA has concluded that it is reasonable to
> extrapolate the adverse CV risk information for Bextra from the
> short-term CABG trials to chronic use given the fact that other
> COX-2 selective NSAIDs have been shown in long-term controlled
> clinical trials to be associated with an increased risk of serious
> adverse CV events (e.g., death, MI, stroke), and the well described
> risk of serious, and often life-threatening gastrointestinal
> bleeding .... To date, there have been no studies that demonstrate
> an advantage of Bextra over other NSAIDs that might offset the
> concern about the[] serous skin risks, such as studies that show a GI
> safety benefit, better efficacy compared to other products, or
> efficacy in a setting of patients who are refractory to treatment with
> other products.

35.        The scientific data available during and after BEXTRA's approval

process did alert, or should have alerted Defendants that their formulation of BEXTRA could cause

a higher risk of clotting, stroke and/or myocardial infarctions among BEXTRA consumers, alerting

them to the need to do sufficient safety studies prior to drug research.

- 7 -                                                                      COMPLAINT

1        36.        As stated by Dr. Erick Topol on October 21, 2004, in *The New*

2 *England Journal of Medicine*, outlining Defendants' failure to have conducted the necessary trials

3 before marketing to humans ". . . it is mandatory to conduct a trial specifically assessing

4 cardiovascular risk and benefit of (COX-2 inhibitors). Such a trial needed to be conducted in

5 patients with established coronary artery disease, who frequently have coexisting osteoarthritis

6 requiring medication and have the highest risk of further cardiovascular events."

7        37.        Dr. Topol was also an author on a study published in August 2001 in

8 the *Journal of the American Medical Association* that reported an increased risk of thrombotic

9 cardiovascular events in persons who used COX-2 inhibitors. The study theorized that COX-2

10 inhibitors interfered with platelet aggregation and were potentially clot forming. Dr. Garrett

11 Fitzgerald, of the University of Pennsylvania, in an editorial published in *The New England*

12 *Journal of Medicine* on October 21, 2004, reported that it was known as early as 1999 that the

13 COX-2 inhibitors suppressed the formation of prostaglandin I-2 in healthy volunteers, that this

14 inhibited platelet aggregation in vitro, and that this may predispose patients to myocardial

15 infarction or thrombotic stroke.

16        38.        Based upon readily available scientific data, Defendants knew, or

17 should have known, that their pre-approval testing of BEXTRA did not adequately represent the

18 cross-section of individuals who were intended consumers and therefore likely to take BEXTRA.

19 Therefore, the testing performed was grossly inadequate.

20        39.        Had Defendants done adequate testing prior to approval and "market

21 launch," Pharmacia's scientific data would have revealed significant increases in stroke and

22 myocardial infarction amongst the intended population of BEXTRA consumers. Adequate testing

23 would have shown that BEXTRA possessed serious side effects. Defendants should have taken

24 appropriate measures to ensure that their defectively designed product would not be placed in the

25 stream of commerce and/or should have provided full and proper warnings accurately and fully

26 reflecting the scope and severity of symptoms of those side effects should have been made.

27

28

40.     In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but this information was intentionally suppressed by Defendants in order for them to gain significant profits from continued BEXTRA sales.

41.     Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

42.     At the time Defendants manufactured, advertising, and distributed BEXTRA to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase BEXTRA, but instead would purchase other cheaper and safer NSAID drugs.

43.     At all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers would perceive BEXTRA as a better drug than its competitors and, therefore, purchase BEXTRA.

44.     Defendants widely and successfully marketed BEXTRA throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of BEXTRA in order to induce a widespread use and consumption. BEXTRA was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems. Defendants made misrepresentations by means of media advertisements, and statements contained in sales literature provided to Plaintiffs' prescribing physicians.

45.     Prior to manufacturing, sale and distribution of BEXTRA, Defendants, through their officers, director and managing agents, had notice and knowledge from several sources, that BEXTRA presented substantial and unreasonable risks of harm to the consumer. As such, BEXTRA consumers, including Plaintiff, were unreasonably subject to risk of injury or death from the consumption of Defendants' product, BEXTRA.

46.     Despite such knowledge, Defendants and Defendants' predecessors in interest, through their officers, directors and managing agents for the purpose of increasing sales

COMPLAINT

1    and enhancing its profits, knowingly and deliberately failed to remedy the known defects of

2    Defendants' product, BEXTRA, and failed to warn the public, including Plaintiffs, of the serious

3    risk of injury occasioned by the defects inherent in Defendants' product, BEXTRA. Defendants

4    and their officers, agents and managers intentionally proceeded with the inadequate testing, and

5    then the manufacturing, sale and marketing of Defendants' product, BEXTRA, knowing that

6    persons would be exposed to serious potential danger, in order to advance their own pecuniary

7    interests. Defendants' conduct was wanton and willful, and displayed a conscious disregard for the

8    safety of the public and decedent.

9                                     **CLAIMS FOR RELIEF**

10                              **FIRST CLAIM FOR RELIEF:**
                                      **Negligence**
11
            47.            Plaintiff incorporates by reference all of the paragraphs of this
12
     Complaint as if fully set forth herein.
13
            48.            Defendants owed Plaintiff and decedent a duty to exercise reasonable
14
     care when designing, manufacturing, marketing, advertising, distributing, and selling BEXTRA.
15
     This duty included the duty not to introduce a pharmaceutical drug, such as BEXTRA, into the
16
     stream of commerce that caused users to suffer from unreasonable, dangerous or untoward adverse
17
     side effects.
18
            49.            At all relevant times to this action, Defendants owed a duty to
19
     properly warn Plaintiff, decedent and the Public of the risks, dangers and adverse side effects of
20
     their pharmaceutical drug BEXTRA.
21
            50.            Defendants breached their duties by failing to exercise ordinary care
22
     in the preparation, design, research, testing, development, manufacturing, inspection, labeling,
23
     marketing, promotion, advertising and selling of BEXTRA, including:
24
                    a.            failing to use due care in the preparation and development of
25
     BEXTRA to prevent the aforementioned risk of injuries to individuals when the drugs were
26
     ingested;
27

28

                                        - 10 -                                    COMPLAINT

1          b.      failing to use due care in the design of BEXTRA to prevent the

2   aforementioned risk of injuries to individuals when the drugs were ingested;

3          c.      failing to conduct adequate pre-clinical testing and research to

4   determine the safety of BEXTRA;

5          d.      failing to conduct adequate post-marketing surveillance and

6   exposure studies to determine the safety of BEXTRA;

7          e.      failing to completely, accurately and in a timely fashion, disclose

8   the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs,

9   consumers, the medical community, and the FDA;

10         f.      failing to accompany BEXTRA with proper warnings regarding all

11  possible adverse side effects associated with the use of BEXTRA;

12         g.      failing to use due care in the manufacture, inspection, and labeling

13  of BEXTRA to prevent the aforementioned risk of injuries to individuals who used BEXTRA;

14         h.      failing to use due care in the promotion of BEXTRA to prevent the

15  aforementioned risk of injuries to individuals when the drugs were ingested;

16         i.      failing to use due care in the sale and marketing of BEXTRA to

17  prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

18         j.      failing to use due care in the selling of BEXTRA to prevent the

19  aforementioned risk of injuries to individuals when the drugs were ingested;

20         k.      failing to provide adequate and accurate training and information to

21  the sales representatives who sold BEXTRA;

22         l.      failing to provide adequate and accurate training and information to

23  healthcare providers for the appropriate use of BEXTRA; and

24         m.      being otherwise reckless, careless and/or negligent.

25      51.        Despite the fact that Defendants knew or should have known that

26  BEXTRA caused unreasonable and dangerous side effects which many users would be unable to

27  remedy by any means, Defendants continued to promote and market BEXTRA to consumers,

28  including decedent, when safer and more effective methods of pain relief were available.

- 11 -                                COMPLAINT

1            52.          Defendants were, or should have been, had they exercised reasonable

2    care, in possession of evidence demonstrating that BEXTRA caused serious side effects.

3    Nevertheless, they continued to market their products by providing false and misleading

4    information with regard to the safety and efficacy of BEXTRA.

5            53.          Defendants knew or should have known that consumers such as

6    decedent would foreseeably suffer injury as a result of their failure to exercise ordinary care as

7    described above.

8            54.          As a direct and proximate consequence of Defendants' acts,

9    omissions, and misrepresentations described herein, Plaintiff's decedent sustained serious

10   cardiovascular injuries and related losses. Plaintiff will continue to suffer mental anguish, physical

11   pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life and

12   other losses and damages. Plaintiff's decedent direct medical losses and costs include care for

13   hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff has also

14   suffered loss of wages and/or wage earning capacity.

15           55.          Defendants' conduct was committed with knowing, conscious,

16   wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

17   consumers, including decedent, thereby entitling Plaintiff to punitive and exemplary damages so as

18   to punish Defendants and deter them from similar conduct in the future.

19           56.          WHEREFORE, Plaintiff demands judgment against Defendants and

20   seek compensatory damages, and exemplary and punitive damages together with interest, the costs

21   of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

22   

**SECOND CLAIM FOR RELIEF:**
**Strict Liability**

23           57.          Plaintiff incorporates by reference all previous paragraphs of this

24   Complaint as if fully set forth herein and further alleged as follows:

25           58.          At all times relevant to this action, Defendants were suppliers of

26   BEXTRA, placing the drug into the stream of commerce.  BEXTRA was expected to and did reach

27

28

                         - 12 -                     COMPLAINT

1   Plaintiff's decedent without substantial change in the condition in which it was manufactured and
2   sold.

3                   59.              BEXTRA was unsafe for normal or reasonably anticipated use.

4                   60.              BEXTRA was defective in design or formulation because when it
5   left the hands of the manufacturer and/or supplier, it was unreasonably dangerous and more
6   dangerous than an ordinary consumer would expect. BEXTRA was also defective and
7   unreasonably dangerous in that the foreseeable risk of injuries from BEXTRA exceeded the
8   benefits associated with the design and/or formulation of the product.

9                   61.              The BEXTRA manufactured and supplied by Defendants was also
10  defective due to inadequate warnings, and/or inadequate clinical trials, testing and study, and
11  inadequate reporting regarding the results of the clinical trials, testing and study. Defendants failed
12  to perform adequate testing before exposing decedent to the medication, testing which would have
13  shown that BEXTRA had the potential to cause serious side effects.

14                  62.              The BEXTRA manufactured and supplied by Defendants was
15  defective due to inadequate post-marketing warnings or instructions because, after Defendants
16  knew or should have known of the risk of injuries from BEXTRA, they failed to provide adequate
17  warnings to the medical community and the consumers, to whom they were directly marketing and
18  advertising BEXTRA; and, further, it continued to affirmatively promote BEXTRA as safe and
19  effective.

20                  63.              BEXTRA was manufactured, distributed, tested, sold, marketed,
21  advertised and promoted defectively by Defendants, and as a direct and proximate cause of
22  Defendants' defective design of BEXTRA, decedent used BEXTRA rather than other safer and
23  cheaper NSAIDs. As a result, decedent suffered an untimely death.

24                  64.              Information given by Defendants to the medical community and to
25  the consumers concerning the safety and efficacy of BEXTRA, especially the information
26  contained in the advertising and promotional materials did not accurately reflect the potential side
27  effects of BEXTRA.

28

                                              - 13 -                                    COMPLAINT

1    65.        Had adequate warnings and instructions been provided, Plaintiff's

2 decedent would not have taken BEXTRA as she did, and would not have been at risk of the

3 harmful side effects described herein.

4    66.        Defendants acted with conscious and deliberate disregard of the

5 foreseeable harm caused by BEXTRA.

6    67.        Decedent could not, through the exercise of reasonable care, have

7 discovered BEXTRA's defects or perceived the dangers posed by the drug.

8    68.        As a direct and proximate consequence of Defendants' acts,

9 omissions, and misrepresentations described herein, Plaintiff's decedent sustained serious

10 cardiovascular injuries and related losses. Plaintiff will continue to suffer mental anguish, physical

11 pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life and

12 other losses and damages. Plaintiff's direct medical losses and costs include care for

13 hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff has also

14 suffered loss of wages and/or wage earning capacity.

15    69.        Defendants' conduct was committed with knowing, conscious,

16 wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

17 consumers, including decedent, thereby entitling Plaintiff to punitive and exemplary damages so as

18 to punish Defendants and deter them from similar conduct in the future.

19    70.        WHEREFORE, Plaintiff demands judgment against Defendants and

20 seek compensatory damages, and punitive and exemplary damages together with interest, the costs

21 of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

22                           **THIRD CLAIM FOR RELIEF:**
                             **Breach of Express Warranty**

23    71.        Plaintiff incorporates by reference all of the paragraphs of this

24 Complaint as if fully set forth herein.

25    72.        Defendants expressly represented to decedent and other consumers

26 and the medical community that BEXTRA was safe and fit for its intended purposes, that it was of

27

28

- 14 -                                             COMPLAINT

1  merchantable quality, that it did not produce any dangerous side effects, particularly any

2  unwarned-of side effects, and that it was adequately tested.

3              73.              These warranties came in the form of:

4                      a.              Defendants' public written and verbal assurances of the safety and

5  efficacy of BEXTRA;

6                      b.              Press releases, interviews and dissemination via the media of

7  promotional information, the sole purpose of which was to create an increased demand for

8  BEXTRA, which failed to warn of the risk of injuries inherent to the ingestion of BEXTRA,

9  especially to the long-term ingestion of BEXTRA;

10                      c.              Verbal and written assurances made by Defendants regarding

11  BEXTRA and downplaying the risk of injuries associated with the drug;

12                      d.              False and misleading written information, supplied by Defendants,

13  and published in the Physician's Desk Reference on an annual basis, upon which physicians relied

14  in prescribing BEXTRA during the period of decedent's ingestion of BEXTRA, and;

15                      e.              Advertisements.

16              74.              The documents referred to above were created by and at the direction

17  of Defendants.

18              75.              Defendants knew or had reason to know that BEXTRA did not

19  conform to these express representations in that BEXTRA is neither as safe nor as effective as

20  represented, and that BEXTRA produces serious adverse side effects.

21              76.              BEXTRA did not and does not conform to Defendants' express

22  representations because it is not safe, has numerous and serious side effects, including unwarned-of

23  side effects, and causes severe and permanent injuries.

24              77.              Plaintiff's decedent, other consumers, and the medical community

25  relied upon Defendants' express warranties.

26              78.              As a direct and proximate consequence of Defendants' acts,

27  omissions, and misrepresentations described herein, Plaintiff's decedent sustained serious

28  cardiovascular injuries and related losses. Plaintiff will continue to suffer mental anguish, physical

- 15 -                                    COMPLAINT

1 pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life and

2 other losses and damages. Plaintiffs direct medical losses and costs include care for hospitalization,

3 physician care, monitoring, treatment, medications, and supplies. Plaintiff has also suffered loss of

4 wages and/or wage earning capacity.

5        79.        Defendants' conduct was committed with knowing, conscious,

6 wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

7 consumers, including decedent, thereby entitling Plaintiff to punitive and exemplary damages so as

8 to punish Defendants and deter them from similar conduct in the future.

9        80.        WHEREFORE, Plaintiff demands judgment against Defendants and

10 seek compensatory damages, and punitive and exemplary damages together with interest, the costs

11 of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

12                     **FOURTH CLAIM FOR RELIEF:**
                       **Breach of Implied Warranty**
13
          81.        Plaintiff incorporates by reference all of the paragraphs of this
14
   Complaint as if fully set forth herein.
15
          82.        Defendants manufactured, distributed, advertised, promoted, and
16
   sold BEXTRA.
17
          83.        At all relevant times, Defendants knew of the use for which
18
   BEXTRA was intended and impliedly warranted the product to be of merchantable quality and
19
   safe and fit for such use.
20
          84.        Defendants were aware that consumers, including decedent would
21
   use BEXTRA for treatment of pain and inflammation and for other purposes.
22
          85.        Decedent and the medical community reasonably relied upon
23
   Defendants' judgment and expertise to only sell them or allow them to prescribe BEXTRA only if
24
   it was indeed of merchantable quality and safe and fit for its intended use. Consumers, including
25
   decedent and the medical community, reasonably relied upon Defendants' implied warranty for
26
   BEXTRA.
27
28

                              - 16 -                    COMPLAINT

1          86.          BEXTRA reached consumers, including decedent, without

2    substantial change in the condition in which it was manufactured and sold by Defendants.

3          87.          Defendants breached their implied warranty to consumers, including

4    decedent; BEXTRA was not of merchantable quality or safe and fit for its intended use.

5          88.          As a direct and proximate consequence of Defendants' acts,

6    omissions, and misrepresentations described herein, decedent sustained serious cardiovascular

7    injuries and related losses. Plaintiff will continue to suffer mental anguish, physical pain and

8    suffering, diminished capacity for the enjoyment of life, a diminished quality of life and other

9    losses and damages. Plaintiffs direct medical losses and costs include care for hospitalization,

10   physician care, monitoring, treatment, medications, and supplies. Plaintiff has also suffered loss of

11   wages and/or wage earning capacity.

12         89.          Defendants' conduct was committed with knowing, conscious,

13   wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

14   consumers, including decedent thereby entitling Plaintiff to punitive and exemplary damages so as

15   to punish Defendants and deter them from similar conduct in the future.

16         90.          WHEREFORE, Plaintiff demands judgment against Defendants and

17   seek compensatory damages and punitive and exemplary damages together with interest, the costs

18   of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

19                      **FIFTH CLAIM FOR RELIEF:**
                   **Fraudulent Misrepresentation & Concealment**

20         91.          Plaintiff incorporates by reference all of the paragraphs of this

21   Complaint as if fully set forth herein.

22         92.          Defendants' superior knowledge and expertise, their relationship of

23   trust and confidence with doctors and the public, their specific knowledge regarding the risks and

24   dangers of BEXTRA, and their intentional dissemination of promotional and marketing

25   information about BEXTRA for the purpose of maximizing its sales, each gave rise to the

26   affirmative duty to meaningfully disclose and provide all material information about BEXTRA's

27   risks and harms to doctors and consumers.

28

                              - 17 -                              COMPLAINT

1          93.          Defendants made fraudulent affirmative misrepresentations with

2    respect to BEXTRA in the following particulars:

3                   a.          Defendants represented through their labeling, advertising,

4    marketing materials, detail persons, seminar presentations, publications, notice letters, and

5    regulatory submissions that BEXTRA had been tested and found to be safe and effective for the

6    treatment of pain and inflammation; and

7                   b.          Defendants represented that BEXTRA was safer than other

8    alternative medications.

9          94.          Defendants made affirmative misrepresentations; and fraudulently,

10    intentionally and/or recklessly concealed material adverse information regarding the safety and

11    effectiveness of BEXTRA.

12          95.          Defendants made these misrepresentations and actively concealed

13    adverse information at a time when Defendants knew or had reason to know that BEXTRA had

14    defects and was unreasonably dangerous and was not what Defendants had represented to the

15    medical community, the FDA and the consuming public, including decedent.

16          96.          Defendants omitted, suppressed and/or concealed material facts

17    concerning the dangers and risk of injuries associated with the use of BEXTRA including, but not

18    limited to, the cardiovascular, cerebrovascular, and other serious health risks. Furthermore,

19    Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise

20    understated the serious nature of the risks associated with the use of BEXTRA in order to increase

21    its sales.

22          97.          The representations and concealment were undertaken by Defendants

23    with an intent that doctors and patients, including decedent, rely upon them.

24          98.          Defendants' representations and concealments were undertaken with

25    the intent of defrauding and deceiving decedent, other consumers, and the medical community to

26    induce and encourage the sale of BEXTRA.

27

28

- 18 -                                    COMPLAINT

1    99.    Defendants' fraudulent representations evinced their callous,

2    reckless, willful, and depraved indifference to the health, safety, and welfare of consumers,

3    including decedent.

4    100.    Decedent relied on and was induced by Defendants'

5    misrepresentations, omissions, and/or active concealment of the dangers of BEXTRA in selecting

6    BEXTRA treatment.

7    101.    Decedent and the treating medical community did not know that the

8    representations were false and were justified in relying upon Defendants' representations.

9    102.    Had decedent been aware of the increased risk of side effects

10    associated with BEXTRA and the relative efficacy of BEXTRA compared with other readily

11    available medications, Plaintiff's decedent would not have taken BEXTRA as she did.

12    103.    As a direct and proximate consequence of Defendants' acts,

13    omissions, and misrepresentations described herein, Plaintiff and the decedent sustained serious

14    cardiovascular injuries and related losses. Plaintiff's decedent has incurred medical and related

15    expenses. Plaintiff will continue to suffer mental anguish, physical pain and suffering, diminished

16    capacity for the enjoyment of life, a diminished quality of life and other losses and damages.

17    Plaintiff's direct medical losses and costs include care for hospitalization, physician care,

18    monitoring, treatment, medications, and supplies. Plaintiff has also suffered loss of wages and/or

19    wage earning capacity.

20    104.    WHEREFORE, Plaintiff demands judgment against Defendants and

21    seek compensatory damages, and punitive and exemplary damages together with interest, the costs

22    of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

23    **SIXTH CLAIM FOR RELIEF**
    **(Unjust Enrichment)**

24

25    105.    Plaintiff incorporates by reference all previous paragraphs of this

    Complaint as if fully set forth herein.

26

27    106.    At all times relevant to this action, Defendants were the

    manufacturers, sellers, and/or suppliers of BEXTRA.

28

- 19 -    COMPLAINT

1          107.          Plaintiff's decedent paid for BEXTRA for the purpose of managing

2    his/her pain safely and effectively.

3          108.          Defendants have accepted payment from decedent for the purchase

4    of BEXTRA.

5          109.          Plaintiff's decedent did not receive the safe and effective

6    pharmaceutical product for which she paid.

7          110.          It is inequitable and unjust for Defendants to retain this money

8    because the Plaintiff's decedent did not in fact receive the product Defendant represented

9    BEXTRA to be.

10          111.          WHEREFORE, Plaintiff demands judgment against Defendants and

11    seek equitable relief, the costs of suit and attorneys' fees, and such other and further relief as this

12    Court deems just and proper.

13

14                              **SEVENTH CLAIM FOR RELIEF**
                                    **(Wrongful Death)**

15          112.          Plaintiff incorporates by reference all previous paragraphs of this

16    Complaint as if fully set forth herein.

17          113.          As a result of the conduct of Defendants and the ingestion of

18    BEXTRA by Plaintiff's decedent, the decedent suffered fatal injuries.

19          114.          As a result of the death of the Plaintiffs' decedent, Plaintiffs were

20    deprived of love, companionship, comfort, support, affection, society, solace and moral support of

21    the decedent.

22          115.          Plaintiff is entitled to recover economic and non-economic damages

23    against all defendants for wrongful death directly and legally caused by Defendants' product and

24    the negligent acts, errors, omissions and intentional and negligent misrepresentations of

25    Defendants and each of them.

26                                   **PRAYER FOR RELIEF**

27                    WHEREFORE, Plaintiff requests the following relief:

28                    1.          General damages in excess of the jurisdictional amount of this Court;

                                        - 20 -                              COMPLAINT

1              2.     Consequential damages;

2              3.     Disgorgement of profits;

3              4.     Restitution;

4              5.     Punitive and exemplary damages;

5              6.     Pre-judgment and post-judgment interest as provided by law;

6              7.     Recovery of Plaintiff decedent's costs including, but not limited to,

7    discretionary Court costs of these causes, and those costs available under the law, as well as

8    expert fees and attorneys' fees and expenses, and costs of this action; and

9              8.     Such other and further relief as the Court deems just and proper.

10

11   Dated: February 4, 2008                          Respectfully submitted,

12                                                    GIRARDI KEESE

13

14                                                    By:
                                                         J. PAUL SIZEMORE
15
                                                      Attorneys for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28

1          **DEMAND FOR JURY TRIAL**

2          Plaintiff demands a trial by jury on all claims so triable in this action.

3    Dated: February 4, 2008                        Respectfully submitted,

4                                                   GIRARDI KEESE

5

6                                                   By:
                                                      J. PAUL SIZEMORE
7
                                                   Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

JAMES SIMMONS, individually and as Successor-In-Interest of the Estate of JOANN PAULA SIMMONS, Deceased,

## DEFENDANTS

PFIZER, INC., PHARMACIA CORP., and G.D. SEARLE LLC, (FKA G.D. SEARLE & CO.),

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New York
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

V. ANDRE SHERMAN, SBN 198684
GIRARDI KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017   (213) 977.0211

Attorneys (If Known)

*E-filing* **ADR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury—Med. Malpractice<br>☒ 365 Personal Injury—Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | | ☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 another district (specify)
☒ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment
Transferred from

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Medical device products liability.
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".   Judge Breyer - MDL 1699

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
February 4, 2008

SIGNATURE OF ATTORNEY OF RECORD   V. ANDRE SHERMAN